This is case number 4-12-0881, State Journal Register v. University of Illinois at Springfield, for the appellant, Attorney Craven, and I assume you're doing all the argument, Mr. Craven? Yes, ma'am. Alright, and for the appellee, Attorney William Roberts and Charles Schmadeke. And are you dividing your time? No, Your Honor, I'll be doing it. Alright, great. Thanks, Mr. Schmadeke. Okay, Mr. Craven. Thank you, Your Honor. May it please the court and counsel, good afternoon. This case arises under the Illinois Freedom of Information Act, and as this court conducts a de novo review of the record in this matter, there are several presumptions which arise from both the act and the case law which should be considered by the court. First of all, there is a presumption of access to public records in the state of Illinois. There is a presumption of openness. The exemptions in the act, the exemptions to disclosure, are to be read narrowly, again, in favor of that presumption of access. The burden of proof that an exemption applies to a requested record is on the defendant, and since 2010, that burden requires establishing the application of an exemption by clear and convincing evidence. And lastly, to the extent that the redaction of a record would remove any exempt material, so that disclosure of non-exempt material can be accomplished, exemption is required. I'm sorry, redaction is required. This matter comes on for review on the grant of summary judgment to the defendant, and as I noted, this court conducts a de novo review. Some of the records have been released, and what remain to be considered by this court have been described by the university as detailed factual accounts of the incidents involving these coaches and these students. Three exemptions have been raised. FERPA, the Federal Educational Rights Record Privacy Act, the General Privacy Exemption in the Illinois Act, and the Preliminary Draft Exemption. Dealing first with FERPA, the FERPA exemption raises a question of both law and fact. Exemption 7A in the Illinois Act allows the withholding of records specifically prohibited from disclosure by state or federal law. Does FERPA specifically prohibit the disclosure of records? Not really. It imposes a penalty on universities who have a practice and policy of releasing private educational records, and I'm sure the university would argue that that penalty is onerous. But it does not specifically prohibit the disclosure of records. As noted in the briefs, some courts have found that FERPA does prohibit disclosure, and some have found that it does not. The university argues that it's essentially a contract argument. By taking the money from the federal government, we have obligated ourselves not to release these records. Frankly, in Illinois, the courts have rejected that kind of contract analysis, both in the Carbondale case, which is cited in the records, and also in a case involving Caremark Pharmacy, in which the pharmacy claimed that the costs charged to the state were trade secrets. Frankly, on this record, this court need not reach the issue of whether FERPA specifically prohibits the release of records. Even if FERPA is read as a prohibition on the disclosure of private educational records, the university has failed to show, by clear and convincing evidence, that the records, in redacted form, fall within that prohibition. The university must establish that the records cannot be redacted, which would allow the release of non-exempt materials. It appears on this record that the trial court, after its review of the records, and during the oral argument before the court, was not convinced. The university makes the argument that the identity of the student or students involved in these incidents is so intertwined with other materials that redaction is impossible. The transcript reveals in several places that the trial court disagreed. For instance, the trial court's use of the term malarkey to describe the intertwined argument fails to reinforce any conclusion that the university met its burden of proof under 320. The record of 320 indicated that it had considered the intertwined argument, and frankly, considered it malarkey. At page 334 of the record, the court again rejects the argument that exempt and non-exempt materials are all wound together. Dealing with the interviews with the coaches, the court stated, if you can redact anything that relates to the victims, that which the coaches did or didn't say, what's the problem with disclosing that? Because that seems to be more consistent with what happened, and this gives you a fairly decent idea of why they are no longer employed. What about the disclosure of what the coaches say is inappropriate or protected? You make the argument it's all wound together, and I disagree with that argument. There is nothing, going further, there is nothing from the statements from the coaches that you can possibly bring back to person A. The trial court, after its review of these records, clearly found that there was the possibility of redaction. However, in its final order, the court went the other way and found that FERPA prohibited the release of these documents. The court didn't make any findings of fact to contradict the findings that he entertained during the oral argument. This court has the opportunity to make a de novo review of the records, and to determine whether, in fact, the they can't be separated argument is malarkey, or whether the university did, in fact, meet its burden of proof. If the records can be de-identified, if they can be redacted, FERPA does not prohibit the release of the records. Turning to the privacy exemption, the university's assertion of this exemption must also clear the same hurdle. To the extent that the names of the students can be redacted, and the records can be masked, privacy concerns are not at issue. The disclosure of de-identified student records violates neither FERPA nor the privacy exemption. In fact, our Supreme Court in Bowie mandated the disclosure of masked or de-identified school records. There are, in this case, public policy issues which also weigh in favor of disclosure, which can be weighed in consideration of the privacy exemption. Obviously, the university spent $200,000 to resolve a claim by one of these students. Based on what? What kind of investigation was conducted by the university? Who made the decision that these coaches would be allowed to resign rather than be terminated? What did the administrators know when that decision was made? What type of downstream liability was assumed or created by the university by allowing these coaches to resign and move on in their coaching careers to other colleges or recreational or competitive teams in the community? To what extent does the university have liability based on its failure to warn others of the behavior of these coaches? This court in the White case determined that a public body may in fact create liability for itself by not warning others of the behavior of their employees. The final order of this court, of the trial court, makes no findings of fact relating to the privacy exemption. The court simply concludes without stating any factual basis that the privacy exemption prohibits the disclosure of these records. And again, this court has the opportunity to conduct a de novo review, including a review of those records, to determine whether the records are exempt under the privacy exemption. Lastly, the preliminary documents exemption. Exemption 7F prohibits the disclosure of preliminary documents in which policies are formulated or opinions are expressed. And again, I remind the court that exemptions are to be read narrowly. The university describes the remaining undisclosed records as a detailed factual description of these incidents. Detailed factual accounts do not fall within the preliminary document exemption. Both the Watkins case on the state level and the NLRB case on the federal level, all cited in the brief, make clear that this statement does not extend to factual statements. Nor does it extend to opinions expressed by others not related to the university, such as parents or students. Those are not covered by the terms of the exemption. Again, at oral argument, after the court's review of these documents, the trial court seemed to reject the application of this exemption. Didn't seem to reject the application of this exemption. Did reject the application of this exemption. After his statement about the intertwined argument being malarkey, the court stated, Section 7.1.F applies to opinions or policies of a public body. These are the opinions or policies of a public body. These are not the opinions or policies of a public body. They are the statements of witnesses, coaches who may be involved, victims who may have been involved, and I don't see how that constitutes opinions or policies of a public body. My reading of it is that those specific facts, what is discovered during UIS investigation into the sexual assault allegations, is not opinions or policies of a public body, and therefore are disposable under 7.1.F. The trial court's final order, again, contradicts those more detailed findings made after his review of the documents and stated during oral argument. Again, this court has the opportunity to conduct that same de novo review that the trial court had and to determine if the university has met its burden of proof, notwithstanding the records of the trial court following its own review of the records. The trial court rejected all three exemptions, seemingly, during oral argument. The cursory final order of the court is in conflict with the findings of the court made contemporaneously with the court's in-camera review of the documents. The final order of the trial court should be reversed, and this matter should be remanded to the trial court with instructions to order the disclosure of the redacted records consistent with the findings of the trial court, the earlier findings of the trial court, that redaction is possible. If there are no questions, that's this case in a nutshell. Thank you, Mr. Craven. Thank you. Mr. Schmedeke. Thank you, Your Honor. May it please this court and counsel. Your Honor, the university welcomes the de novo review of this matter and the records and urges the court to do so. This case is really a first impression in Illinois. It's to examine the intersection of the Freedom of Information Act and the Family Education and Privacy Rights Act, what we call FERPA. Our research indicates that the United States Supreme Court has not considered the impact of state freedom of information laws on FERPA or vice versa. And as counsel pointed out, this case also raises issues of personal privacy and deliberative process. The university recognizes and endorses all of the state's policy that counsel said to this court. However, there is a key part that counsel left out. The purpose of the FOIA is to prevent government from secreting its decisions from the public whose duty it is to serve. There are a number of exemptions that we are at here. But FERPA does add something to this. While the presumption is that records are supposed to be public, FERPA shifts the stacking of the deck. It says student records, educational records as the statute says, are private. They are confidential. They are not to be disclosed except for certain exceptions and through certain processes. And the right to obtain those records with the exceptions can only arise when the party requesting them meets a very heavy burden that its interest outweighs the privacy interests. Now, it is true that Section 718, as counsel points out, says federal law that prohibits the disclosure. The statute, FERPA I'm referring to, doesn't speak in terms of an out-and-out prohibition. It speaks of we're going to withhold funding. But what the courts, the federal courts and state courts that we've cited in our briefs, have pointed out that the only way this can have meaning is that once you enter into the relationship with the federal government to get federal funds, you are obligated by federal law not to disclose those records. That's what we're dealing with here. Federal law. Now, does FERPA fall neatly within the language employed within Section 718? The Chicago Tribune case cited by both parties in the briefs and by counsel clearly says this. In a way, it doesn't matter. If FERPA provides the prohibition that we believe that it does and we urge the court to find, federal law is the supreme law of the land. Whether it fits into that exemption nicely or not, we believe that it does, candidly, but it's really not necessarily a question that has to be determined. Federal law prohibits these. Once we enter into the relationship, as practically every university in the nation, and certainly every university in the state has, with the federal government for federal funds, there's an obligation. So isn't FERPA, though, trying to keep universities from disclosing information about their students on a voluntary basis? And so if our court, or if you leave here and go to the Supreme Court, orders the disclosure of these documents, assuming they were redacted to protect the privacy of the student, wouldn't that protect you or give you a defense to any type of effort by the federal government to withhold your funds? I believe it would protect us, Your Honor, but I don't believe that that would be a fair reading of the statute with all due respect. In fact, the Iowa Supreme Court addressed that very issue in a case we cited in our brief regarding the University of Iowa, and the court stated therein, yes, there is an exception for judicial orders of turning over the records or subpoenas, but that doesn't apply to cases where the records themselves are at issue. It applies when the records are relevant to an independent issue pertaining to that litigation. For instance, if there was a crime committed and the records contained relevant evidence to the guilt or innocence, they could be turned over. But for the issue of whether the records can be turned over by themselves, that isn't necessarily a proper proceeding. But it would give us protection, no question about it. However, I would also point out, in the Miami University case, the Supreme Court of Ohio, and this is cited in our brief, said to the Miami University, turn these records over. At that point, the Department of Education, the United States government, sued Miami University and said, you are not allowed to do that. So while it protects us necessarily from possible defunding by the federal government, it doesn't shield us from a suit by the federal government not to turn those records over. And I would add at this point, then we're dealing again, like Ohio did, with conflicting state and federal law. If this court were to hold that FOIA trumps FERPA here, or FERPA doesn't apply, not only are you thwarting congressional policy of privacy for the students, but you're creating a situation where the universities, UIS in particular, that's who I represent here, doesn't know what to do. Do we comply with state law, FOIA, or FERPA? And that's where the Department of Education sued Miami University and gave them that clear direction. Your Honor, there are three issues with FERPA that this court needs to address. One is, does FERPA provide an out-and-out prohibition for the release of educational records? We believe that it does. The second issue is, are these educational records? And the third issue is, and I will address that, is redaction. Can there be redaction? Educational records have two elements. Are they directly related to a student, and are they maintained by the institution? Now, directly related is quite broad. It does not mean primarily related. In fact, there are cases that say records can be directly related to a student, and also directly related to an employee, for instance. That doesn't necessarily mean that they're not educational records. Educational records are not restricted to academic performance records, the financial aid records. They're any record that directly relate to a student and are maintained by the university, in this case. Now, there is an employee exception. Down below, the newspaper argued that these records concern an employee. They obviously do. But FERPA's regulations clearly says, if the record exclusively pertains to the employee, then they're not educational records. Implying that if it also directly relates to a student, they are educational records. These records contain personal identifying information, which is described in the regulations. But essentially that is information alone or in combination that is linked or linkable with other information that a reasonable person could use to identify a student. Now, that leads us to the next question, redaction. We have argued that redaction is not available or appropriate in this case. Now, counsel read the record to the court. There's clearly what the judge said. But if you look at the court's order, the trial court's order, after the argument, he went back and he said, I re-reviewed the records. Now, that's not a quote, but he does say, I reviewed them again, I believe is the words he used. I reviewed them again and I determined that they are protected by FERPA. I determined that they are private and I determined that they're deliberative process materials. He has the right, after reviewing everything before him, the law, the arguments, the records themselves, to make a final determination, not only the right but the obligation. What he said in oral argument, he did say. But after the review of the records again, he made these determinations. I don't know why that's unusual. I think asking questions and expressing things is what this process is all about. Anyway, Your Honor, with regard to redaction, if because of other released records or other publicly available information, redaction is insufficient to prevent identification, the whole record may be withheld. That's what the Department of Education says. And that's what the courts who have looked at this issue say as well. Is it appropriate here to come to the conclusion that elements would remain within those records, even if we blacked out the student names? Are there elements remaining within those records that would identify who these students are? The campus at UIS, it's a small campus, less than 5,000 students in 2009 when this event occurred. Thirteen students are on the women's softball team. Five women are on the golf team. Now, these records pertain to factual events. In some cases, as counsel said, we don't deny it. There are detailed accounts. In fact, that's what the newspaper is seeking, the detailed accounts. It knows essentially what happened. It just lacks the detailed accounts. And that's what we're talking about here. These things are so highly personal and so highly attributive to these individual students that you cannot remove all of the elements. Let me give an example. The golf coach that was the subject of some of these records. And there's no question, we've admitted it's in the record. There was some sort of inappropriate content. If the record released showing what all of that occurred, we could black out the name of the student, but there's so much other information in there that would lead a reasonable person, either by linking it with public information that's already been given or other information from other sources, to identify who that student is. An example would be they shared relationships. They had certain people in common that they knew or something of that sort. That's just an example. These records, I urge the court to provide that Danilova review. They're quite detailed in terms of who did what and how this student responded or what this student did. And it's not impossible to determine, even without knowing the name, who these individuals are. We're talking about a very small set of individuals. So those are the three issues. Are they prohibited from disclosure by FERPA? We assert they clearly are. Are they educational records? I don't believe it's even been contested that they are. Is redaction available? In this case we don't believe so. I will concede. Courts have said if redaction is available to sufficiently hide the identity of students, redaction is an appropriate way to go. We don't deny that's the law. The question is, and the trial court below apparently agrees, redaction is not possible here because too many identifying elements remain. So, Mr. Schmeneker, are you saying FERPA would not apply if you could appropriately redact so that the student's identity was protected? Well, Your Honor, in fact, there is a court from, all the cases I'm citing are not from Illinois, obviously, but there is a case that says that very thing, that if you can remove all of the identifying information, they may not be an educational record. So FERPA may not cover them. The personal privacy exemption. Essentially, as this Court is well aware, pertains to the unwarranted evasion of personal privacy, which is information that is highly personal or objectionable to a reasonable person in which the privacy interests outweigh any legitimate public interest. As the Illinois Supreme Court has said, the very purpose of this exemption is to protect personal privacy. What can be more personal than what we're talking about is the subject of these records. Newspapers printed an article saying students were the subject of, quote, sexual assault, close quote. Now, I'm not confirming or denying that, but that's what the newspaper has said. If that's true, what could be more private to these students? That, in and of itself, shows this is personal, this is highly objectionable, that nobody would want this information about themselves released. These records disclose the activities of these students. Some of these activities were involuntary. Some of them were voluntary. The newspaper said their interest in this is to show whether or not there was an abuse of power by the coaches and whether the university properly handled this investigation. The records that the newspaper has clearly demonstrate that that interest has been satisfied. All they want now are the specific details, the facts. And I agree, that's what we said they are, because that's what they are. Although we also say that there will be opinions and recommendations and so forth. But there are clearly, what they're looking for is the very specific details. They've got the amount of the settlement, $200,000. They know the name of the lawyer that represented the particular student athlete. They know the coaches involved. They know the time and place. They've published several newspaper accounts about it. What they don't know is the exact details. The privacy interests of those students outweigh the public interest at this point in time. This is disregarding FERPA. This is the privacy that we're concerned about as the students. Not the coaches. Their name has been disclosed from the outset. We don't necessarily care about them. They're no longer employees, but we do care about our students and what happens to them and what's disclosed about them. The specific details do not trump the students' privacy interests here. Now the deliberative process, or the preliminary drafts question, I'll get to very briefly. That is to demonstrate a give and take between staff members so that there can be a frank and open communication about how to deal with a particular issue. It pertains to opinions, impressions, recommendations, and policies. Again, Your Honor, I concede that if redaction were possible, that would be an appropriate way to go. And I urge this court... Counsel, would you also agree that once a final decision has been made, then that no longer applies as well, the deliberative process? I agree that it applies to the facts, Your Honor. I believe that the process itself remains exempt to show how it came about, who made the recommendations for certain actions, what the opinions were. Otherwise, you would still worry about the open candor becoming public at a later date. But I'm saying that things outlined after a final decision has been made, it's no longer part of a deliberative process. Oh, I agree with that. I agree with that. Yes, Your Honor. We're looking for uninhibited cooperation here from the witnesses, who happen to be students, from other faculty members, from other staff members. They need us to make this kind of issue. Now, if redaction were appropriate, as I was saying, I would agree with counsel in the newspaper. But this is something that cannot be done. It's practically impossible. These records are so intertwined, is the word I used at the trial court, and I will use it again here. Counsel may think it's malarkey. Trial court may have said it, but ultimately issued a final order saying it's not malarkey. These records cannot be redacted, whether for FERPA, for personal privacy matter, or for the deliberative process matter. Mr. Smedeky, wasn't there a letter written by a parent to the school? There was. And it wasn't a parent to one of these students, was it? I believe that it was. Oh, you think it was? I believe that it was. I thought there was an issue about that in particular, and I was wondering what the privacy interest was there. I thought it was a complaint from a parent who was unrelated to any of the students. Well, I would have to defer to the court. My memory says that it was one of the parents, but I could very well be wrong, Your Honor. I would suggest that if it doesn't identify a current student, then it probably is not under FERPA, and it may not involve personal privacy. If that letter identified students or led to the identity of students, then I would say that it still would be covered under certainly the first two exemptions, maybe not the deliberative process exemption. Counselor, are you aware of any pending cases in any of the other four districts, in Illinois, examining the interplay between FERPA and FOIA? I'm not aware of any pending, Your Honor. I know that it has come up mostly in the trial court areas, but I don't know of any case where it's come up in the appellate or Supreme Court level, either now or in the past. And I have recently, as yesterday, looked at that very issue. That's why I believe this is a case of first impression for this court to decide. Unless there are any further questions, I thank the court and urge it to affirm the trial court's order. Thank you. Thank you, Mr. Schmedke. Mr. Craven, do you remember anything about this letter I'm asking about? Maybe I've got it mixed up. You have to remember that plaintiff FOIA lawyers don't get to see the wizard. That's true. We need not concern ourselves with facts. Very briefly, a newspaper story was written that said that there was a sexual assault. What was the basis of that story? What was the foundation of that story? That redaction works. There was a letter from a lawyer that was sent to the university making a demand on behalf of one of these students. That letter was first produced entirely redacted, except for, you know, Dear Sir and Very Truly Yours. Everything else was redacted. During the administrative process in the Public Access Counselor's Office, the university released that letter redacting the name of the student only. The newspaper story was written. The student remains unidentified. Redaction works. But what about the argument, Mr. Craven, that this was a small group of students on a very small campus? So you have five golfers. You have 13 baseball players. Couldn't the identity of the student be known in the community? Here's the language of the rule. Defining personally identifiable information. Information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community who does not have personal knowledge of the relevant circumstances to identify the student with reasonable certainty. I went to a much smaller school than UIS. I couldn't tell you the name of a golfer. I couldn't, despite the passage of time. It's 5,000 people. But how many of those 5,000 people, without knowledge of the relevant circumstances of these events, know any of the members of the golf team? No members of the softball team. And it's the university's obligation, it's the university's burden, to prove with clear and convincing evidence that that's the set of circumstances on this campus. All they say is, it's a small campus, it might happen. That's not clear and convincing evidence and doesn't meet the standard of the statute. Is the roster of the golf team and the baseball team published? The roster of the golf team and the roster of the softball team are probably in a media guide published by the university. Right, and so I guess my point is... Why isn't that covered by FERPA? If we're so worried about FERPA, when we publish good things, it's okay, but when we have to publish bad things, it's not? What I'm getting at is, so the students could be easily identified by anybody who would go to the university or online to see the roster of the students who are playing these sports, and then would know, based on the five golfers, that it's one or two or how many out there. Those people, those particular five, that had this conduct perpetrated upon them. You know that simply because the golf coach isn't there anymore. That's the nature of that conclusion, yes. But still, looking at these records, and I go back to what the trial court said, and yes, trial court judges do and should change their minds, but remember the posture of this case, please. There's a presumption of openness. The burden is on the university to prove by clear and convincing evidence that an exemption applies. And we go from that intertwined argument is malarkey, I disagree with that argument, and you can't use any of that information from the coaches to track back to person A. We go from those statements and those conclusions during oral argument, without further explanation, to a finding that the university has met its burden by clear and convincing evidence. That's not changing your mind. That's not rethinking something. That's just simply not explained in the order of the court or on the record developed below. Thank you for your time. Thank you, Mr. Craven. The court will take this matter under advisement and will stand in recess. Thank you, lawyers, for your arguments.